IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| L.A.E.,<br><br>        Petitioner,<br>  v.<br><br>CAMMILLA WAMSLEY, Seattle Field Office Director, Immigration & Customs Enforcement & Removal Operations; TODD LYONS, Acting Director of Immigration & Customs Enforcement; U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>        Defendants. | Case No.: 3:25-cv-01975-AN<br><br>ORDER |

        Petitioner L.A.E., an indigenous Purépecha citizen of Mexico and father of three, has lived in the United State for more than twenty-five years. Over a decade ago, respondents U.S. Immigration & Customs Enforcement ("ICE") and U.S. Department of Homeland Security ("DHS") initiated removal proceedings against him. He was released from detention on the determination of an Immigration Judge that he posed no danger to persons or property and was not at risk of fleeing. The Ninth Circuit ultimately stayed the removal proceedings in 2022; that stay remained in effect even after respondents administratively closed the case against petitioner. Nonetheless, while looking for someone else, U.S. Customs & Border Protection ("CBP") officers detained and arrested petitioner in Portland, Oregon on October 24, 2025. In the absence of an individualized determination of petitioner's dangerousness or flight risk, petitioner seeks a writ of habeas corpus and a temporary restraining order directing his release from ICE custody.

        After receiving respondents' brief in opposition to petitioner's motion, the Court held a status conference, during which the parties affirmed that the matter could be submitted on the papers. *See* Loc. R. 7-1(d). For the following reasons, the Court grants petitioner's motion for a temporary restraining

order and orders respondents to immediately release petitioner and to refrain from re-detaining petitioner during the pendency of this litigation.

## LEGAL STANDARD

A motion for a temporary restraining order ("TRO") is subject to substantially the same factors as a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Both TROs and preliminary injunctions "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Generally, a petitioner seeking such an injunction must show: (1) the petitioner is likely to succeed on the merits; (2) the petitioner is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the petitioner; and (4) an injunction is in the public interest. *Id.* at 20.

## BACKGROUND

Petitioner is an indigenous Purépecha citizen of Mexico who has lived in the United States since 1999. Pet. for Writ of Habeas Corpus ("Pet."), ECF [1] ¶¶ 4, 8. He is the father of three children who are United States citizens. *Id.* ¶ 8.

Respondents first initiated removal proceedings against petitioner in 2013. *Id.* ¶ 7. At that time, petitioner posted bond and was released from custody. *Id.* Petitioner's removal proceeding wound its way through the immigration system, culminating in a petition for review ("PFR") to the Ninth Circuit in 2021. *Id.* ¶ 8. While considering the PFR, the Ninth Circuit entered a stay of removal pending the court's mandate. Decl. of Deportation Officer Enrique Rodriguez ("Rodriguez Decl."), ECF [9], ¶ 9. Respondents subsequently filed an unopposed motion to administratively close the case, which the Ninth Circuit granted on March 3, 2022, noting that the stay of removal remained in effect while the case was closed. *Id.* ¶ 10.

On September 23, 2025, respondents filed a motion with the Ninth Circuit to reopen the PFR case against petitioner. *Id.* ¶ 11. A month later, on October 24, 2025, CBP officers detained and arrested petitioner in Portland, Oregon while they were looking for someone else. *Id.* ¶ 12. At 12:54 p.m.

that day, petitioner's counsel filed his petition for a writ of habeas corpus and motion for temporary restraining order, contending that his detention without notice, without explanation, and without an individualized determination of flight risk or dangerousness is contrary to the U.S. Constitution and federal law. *See generally* Pet.; Pet'r Mot. for TRO ("TRO Mot."), ECF [2], at 4-5. Just over two hours later, at 3:14 p.m., petitioner was transferred to the Northwest ICE Processing Center in Tacoma, Washington. *See* Oct. 24, 2025 Order, ECF [6].

On October 28, respondents filed a response opposing both the habeas petition and TRO motion, supported by the declaration of an ICE deportation officer. *See generally* Resp't Resp., ECF [8] ("Gov't Resp."); Rodriguez Decl. On October 29, the Court held a status conference regarding the TRO motion and heard argument from both sides. *See* Minutes of Proceedings, ECF [11].

## DISCUSSION

Petitioner has established that he is likely to succeed on the merits of his habeas claim, that he is suffering irreparable harm in the absence of preliminary relief, and that the balance of hardships and the public's interest tip sharply in his favor.

### A. Likelihood of Success on the Merits

A TRO may be granted based on a movant's showing of "serious questions going to the merits," rather than likelihood of success on the merits, if he shows that the "balance of hardships tips sharply towards the plaintiff." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) ("A preliminary injunction is proper if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest.").[1] Here, petitioner has established, at the very least, serious questions going to the merits of his claims.

---

[1] Respondents contend that a heightened showing applies because petitioner seeks a mandatory injunction. Gov't Resp. 9. An injunction ordering the release of petitioner, however, is prohibitory rather than mandatory because such an order would return circumstances to "'the last uncontested status which preceded the pending controversy.'" *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)); *see Valencia Zapata v. Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2578207, at *4 n.1 (N.D. Cal. Sept. 5, 2025) ("Because Petitioners' release

To prevail on the merits of his petition for a writ of habeas corpus, petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The writ is equally available to noncitizens in immigration detention. *See Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Petitioner contends that his re-detention without explanation, without process, and without a determination that he is a flight risk or danger to the community violates the Due Process Clause of the U.S. Constitution. TRO Mot. 4-5.[2] The Due Process Clause of the United States Constitution protects all "person[s]" from deprivation of "of life, liberty, or property, without due process of law." U.S. Const. amend. V. Supreme Court authority extending back more than 100 years unequivocally holds that this protection applies to all persons in the United States, including noncitizens in the context of removal proceedings. *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896). Accordingly, respondents do not suggest that petitioner is not entitled to the protection of the Due Process Clause.

Assessing whether a noncitizen's detention violates the Due Process Clause requires balancing three factors: (1) "'the private interest that will be affected by the official action'"; (2) "'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'"; and (3) "'the Government's interest, including the function

---

simply returns them to the status quo, it is not a mandatory injunction. . ."). Further, even a mandatory injunction is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). As discussed, *infra*, the likelihood of a serious constitutional injury, which cannot be remedied by money, is high, and the merits of petitioner's case are not at all doubtful. Therefore, petitioner would satisfy this factor even under the heightened standard advanced by respondents.

[2] Petitioner also contends that such actions by respondents are also "arbitrary and capricious and in violation of [r]espondents' own policies" and that he is, therefore, "likely to succeed on the merits of his claim under the Administrative Procedures Act." TRO Mot. 4-5. Respondents argue that petitioner has not adequately pleaded a claim under the APA. Gov't Resp. 11-12. Because the Court concludes that petitioner is likely to succeed on his procedural due process claim, it does not need to decide at this time whether the petition states an APA claim. *See Cottrell*, 632 F.3d at 1139 (9th Cir. 2011) (declining to reach remaining claims after finding "serious questions" on the merits of one claim).

involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.'" *Garro Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

First, the private interest affected by petitioner's detention is his interest in physical liberty. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Respondents generally contend that they have considerable discretion in whether to detain, release, or re-detain noncitizens subject to removal proceedings. Gov't Resp. 6-7. That is true. Nonetheless, even individuals "over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi*, 2025 WL 2084921, at *3. This is particularly relevant when the government wields considerable discretion to make an initial detention decision and decides to release an individual from custody; such a decision creates "an implicit promise that [their liberty] will be revoked only if he fails to live up to the" conditions of release. *Morrissey v. Brewer*, 408 U.S. 471, 483 (1972); *see Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding that pre-deprivation process is due in both the probation and parole contexts). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen subject to removal] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *see Garro Pinchi*, 2025 WL 2084921, at *3 (collecting cases finding that noncitizens have a liberty interest in not being re-detained after being released on bond).

Here, ICE exercised its discretion to release petitioner from custody more than twelve years ago. Rodriguez Decl. ¶ 6. Based on respondents' regulations, this reflects a determination that petitioner's release does not "pose a danger to the safety of other persons or of property" and that he is "likely to appear for any scheduled proceeding." 8 C.F.R. § 1236.1(c)(3); *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), *aff'd*, 905 F.3d 1137 (9th Cir. 2018). Respondents' 2013 release decision also constitutes an implied promise that petitioner's liberty will not be deprived again so long as

he remains neither a danger to the community nor a flight risk. *See Morrissey*, 408 U.S. at 483; *Garro Pinchi*, 2025 WL 2084921, at *4. Respondents do not contend that petitioner violated either of these conditions of his release.

Second, the risk that respondents will erroneously deprive petitioner of his liberty in the absence of a pre-deprivation finding of flight risk or danger is high. Civil immigration detention must be "nonpunitive in purpose" and thus reasonably related to the statutorily authorized purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690. Respondents do not argue that petitioner is dangerous or a flight risk, and the facts of his long tenure in the community, his three U.S. citizen children, and no asserted law enforcement involvement in the last twelve years suggest he is neither. *See* Pet. ¶¶ 7-8. Because there is a serious risk that petitioner will face erroneous deprivation without a particularized finding that he is a flight risk or danger to the community, the second *Matthews* factor favors petitioner.

Respondents contend that "[d]ue to changes in the law since [p]etitioner's release from custody in 2013, he is now detained under [8 U.S.C. § 1225(b)]." It is not clear what "changes" respondents are referring to, as Section 1225 was enacted in 1952 and the last substantial revision to the law was in 1996. *See* Act of Sept. 30, 1996, Pub. L. 104–208, 110 Stat. 3009-579-614. Nonetheless, petitioner is not a noncitizen "seeking admission" within the meaning of Section 1225(b)(2)(A) and is only subject to detention under Section 1226. Section 1225(b) "authorizes the Government to detain certain [noncitizens] *seeking* admission into the country," while Section 1226(a) and (c) "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Petitioner is decisively in the latter category of noncitizens: he has been in the country since 1999, has previously been released on bond pursuant to Section 1226, and was subsequently re-arrested in Portland, Oregon, more than 200 miles from a land border. Rodriguez Decl. ¶¶ 4, 6, 12. Dozens of courts have considered respondents' novel interpretation of Section 1226 over the last year, and they have consistently—almost unanimously—rejected it. *See Rodriguez Vazquez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) (collecting cases and concluding after a thorough analysis that "the government's [interpretation of Section

6

1225] belies the statutory text of the [Immigration & Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"). Respondents have shown no reason to depart from the weight of authority here.

Finally, respondents have articulated no legitimate interest in holding petitioner without a hearing. The government's not-insubstantial interest in enforcing immigration laws, generally, has little bearing on the legitimacy of detaining petitioner without a bond hearing.[3] The only conceivable interest respondents could have in petitioner's detention without a hearing is if he were a flight risk or a danger to the community. As discussed, *supra*, there is scant evidence of that. Respondents suggest that a lapse in petitioner's updating of his address with ICE is sufficient to justify his re-detention. Gov't Resp. 4. Whether that is sufficient evidence that petitioner has become a flight risk, despite three U.S. citizen children, is a determination for an Immigration Judge. Further, the financial cost to the government of providing petitioner a pre-deprivation hearing is minimal compared to the cost of his detention. *Compare Hernandez*, 872 F.3d at 996 ("The costs to the public of immigration detention are 'staggering'") *with Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding the third *Matthews* factor favored the petitioner in an immigration habeas case because "[t]he effort and cost required to provide [the p]etitioner with procedural safeguards is minimal").

Because petitioner's liberty interest is extremely serious, the risk of erroneously depriving him of that interest is high without a pre-deprivation hearing, and the government's interest in detaining him without additional process is low, petitioner is very likely to succeed on the merits of his habeas petition.

---

[3] Indeed, the government represents that the Ninth Circuit's stay of removal has "remained in effect" while the PFR case is closed. *See* Rodriguez Decl. at ¶ 10. At the October 29, 2025, status conference before this Court, counsel for respondents indicated that the Ninth Circuit set a briefing schedule extending through late March 2026. The Ninth Circuit's order has not been made available to this Court, but to the extent that removal is stayed, respondent lacks even an interest in—or lawful authority to initiate—petitioner's removal from the country in the near future.

### B. Irreparable Harm

Petitioner has established that he will suffer irreparable harm in the absence of immediate relief. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Indeed, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up); *see, e.g.*, *Hernandez*, 872 F.3d at 994 (9th Cir. 2017) (finding that irreparable harm "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional"). Here, where the Court has concluded that petitioner's constitutional rights have likely been violated, his continued detention in ICE custody constitutes an irreparable injury that cannot be remedied by damages.

Further, petitioner has raised serious questions about his access to counsel while in custody[4]. TRO Mot. 4. Petitioner's counsel represented at a status conference before this Court that respondents' decision to move petitioner to an out-of-state facility has impaired his ability to confer with petitioner, particularly because petitioner's preferred language is Purépecha, not English or Spanish, and cannot read in any language. Petitioner's counsel further represented that he had learned, through petitioner's wife, that petitioner had been urged to sign documents, including potentially a waiver of rights, that were presented to him by ICE officers in a language he could not read. Respondents did not confirm nor dispute this on the record at the status conference but assert in a subsequent filing that "detainees at the NWIPC who have counsel are only being offered voluntary departure through counsel." Mot. to Modify October 29, 2025 Order, ECF [13], at 2.

Given the labyrinthine nature of immigration law and the harms of an erroneous deportation, abridging access to legal representation in the context of removal proceedings is a particularly

---

[4] The Court has twice ordered respondents to "immediately ensure petitioner's counsel has reasonable access to their client." *See* Oct. 24, 2025 Order, ECF [5]; Oct. 29, 2025 Minutes of Proceedings, ECF [11]. Although the Court trusts and expects that respondents are doing everything in their power to obey the Court's extant orders, the barriers presented by the combination of limited literacy, language, and physical distance render effective access to counsel a live concern.

concrete and irreparable harm. *See Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 565 (9th Cir. 1990) (upholding an injunction designed to remedy government practices when the "cumulative effect" of such practices "was to prevent [noncitizens] from contacting counsel and receiving any legal advice"); *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1163 (D. Or. 2018) ("The harms likely to arise from the denial of access to legal representation in the context of asylum applications are particularly concrete and irreparable."); *Arroyo v. U.S. Dep't of Homeland Sec.*, 2019 WL 2912848, at *17, 22-24 (C.D. Cal. June 20, 2019) (holding that a "significant burden on the attorney-client relationship," especially when not necessary to effectuate removal proceedings, is sufficient injury to justify preliminary injunctive relief). Even under the best circumstances, immigrants in detention are often hindered in their ability to contact and meet with their attorneys. *See Usubakunov v. Garland*, 16 F.4th 1299, 1305 (9th Cir. 2021) (citing Michael Kaufman, Note, *Detention, Due Process, and the Right to Counsel in Removal Proceedings*, 4 STAN. J. C.R. & C.L. 113, 127 (2008)). Given petitioner's limited literacy, significant language barriers, and relocation out of state, these are not the best circumstances. Therefore, the Court concludes that there is a very high likelihood of irreparable harm in the absence of preliminary injunctive relief.

### C. Balance of Equities and Public Interest

The balance of equities and public interest are considered together because the government is a party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, such considerations tip sharply in petitioner's favor. Although the government undoubtedly has a strong interest in the enforcement of its laws, "[t]he only potential injury the government faces is a short delay in detaining [petitioner] if it ultimately demonstrates to a neutral decisionmaker . . . that [his] detention is necessary." *Garro Pinchi*, 2025 WL 2084921, at *7 (collecting cases). But where, as here, there is a "low risk that petitioner would cause harm to others or flee," expenditure of further resources in detaining petitioner is not in the public's interest. *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

Conversely, any burden on respondents is more than outweighed by petitioner's constitutional liberty interests and the need to ensure petitioner's full access to counsel. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a

9

constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Therefore, the balance of equities and public interests tips sharply in petitioner's favor.

### D. Scope of Relief

Finally, respondents contend that petitioner's requested TRO "improperly seeks the ultimate relief [p]etitioner demands in his habeas petition" and should be denied on that basis. Gov't Resp. 9-10. This contention is without support. The Ninth Circuit's decision in *Senate of California v. Mosbacher*, relied upon by respondents, involved a very different request for injunctive relief. 968 F.2d 974, 978 (9th Cir. 1992). There, plaintiff sought release of certain census data. *Id.* at 975. After concluding that the law was "entirely against the position" of plaintiff, the court noted in a brief discussion of balancing equities that once such data is released into the world, defendants "will have lost the whole case for all practical purposes." *Id.* at 978. This is an obvious conclusion because releasing confidential data into the world is not something that can be reversed if the ultimate merits are decided differently than the motion for preliminary relief. The facts here are nothing like those that the Ninth Circuit considered. If the Court were to ultimately deny petitioner's request for a writ, petitioner's release could be reversed by taking him into custody once again. Indeed, courts routinely grant preliminary release pending adjudication of a noncitizen's writ of habeas corpus. *See, e.g.*, *Garro Pinchi v. Noem*, 2025 WL 2084921, at *7; *Valencia Zapata*, 2025 WL 2741654, at *14; *Pablo Sequen v. Kaiser*, No. 25-CV-06487-PCP, 2025 WL 2203419, at *4 (N.D. Cal. Aug. 1, 2025).

### E. Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts, however, have "'discretion as to the amount of security required, *if any*,'" under Rule 65(c). *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). Indeed, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* The Court has considered the

relative hardships and the likelihood of success on the merits and concludes that there is no realistic likelihood of harm to respondents from the issuance of the TRO here and that requiring any bond in this case would be unjust. Therefore, petitioner is not required to furnish a bond.

## CONCLUSION

For the reasons stated herein, petitioner's motion for a temporary restraining order, ECF [2], is GRANTED. The Court hereby ORDERS respondents to immediately release petitioner from custody and ENJOINS respondents, and their agents and employees, from re-detaining petitioner without a notice and a hearing. This temporary restraining order shall take effect immediately and shall remain in effect until November 13, 2025, or further order of this Court.

Respondents' motion to modify October 29, 2025, Order is DENIED as moot.

In addition, the parties are ordered to file a joint status report by November 10, 2025: (1) stating the parties' positions on whether there is cause to extend the order for fourteen additional days through November 27, 2025; (2) stating whether petitioner intends to seek a conversion of the temporary restraining order into a preliminary injunction and, if so, providing a briefing schedule and proposed hearing date; and (3) providing a briefing schedule on the habeas petition.

IT IS SO ORDERED.

DATED this 30th day of October, 2025.

_____
Adrienne Nelson
United States District Judge