IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| L.A.E.,<br><br>         Petitioner,<br>   v.<br><br>CAMMILLA WAMSLEY, Seattle Field Office Director, Immigration & Customs Enforcement & Removal Operations; TODD LYONS, Acting Director, Immigration & Customs Enforcement; U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; KRISTI NOEM, Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>         Defendants. | Case No.: 3:25-cv-01975-AN<br><br>OPINION & ORDER |

Respondents U.S. Immigration & Customs Enforcement ("ICE") and U.S. Department of Homeland Security ("DHS") initiated removal proceedings against petitioner L.A.E. over a decade ago. He was subsequently released from detention on the determination of an Immigration Judge that he posed no danger to persons or property and was not at risk of fleeing. The Ninth Circuit ultimately stayed the removal proceeding in 2022; that stay remains in effect even after respondents administratively closed the case against petitioner. Nonetheless, while looking for someone else, U.S. Customs & Border Protection ("CBP") officers detained and arrested petitioner in Portland, Oregon on October 24, 2025. In the absence of an individualized determination of petitioner's dangerousness or flight risk, petitioner seeks a writ of *habeas corpus*.

The Court issued a temporary restraining order ("TRO") after receiving respondents' brief opposing both petitioner's motion for a TRO and his *habeas* petition. The parties subsequently agreed to convert the TRO to a preliminary injunction pending conclusion of the litigation and agreed that no further briefing was necessary for the Court to resolve the petition. Having heard the parties at a status conference,

1

the Court finds that oral argument will not help resolve this matter. *See* Local R. 7-1(d). For the following reasons, the Court grants petitioner's writ of *habeas corpus*.

## LEGAL STANDARD

To prevail on his petition for a writ of *habeas corpus*, petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because a writ of *habeas corpus* is a civil proceeding, the "petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). The writ is equally available to noncitizens in immigration detention. *See Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Although the *habeas* statute requires the petitioner to be "in custody" when the petition is filed, "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

## BACKGROUND

Petitioner is an indigenous Purépecha citizen of Mexico who has lived in the United States since 1999. Pet. for Writ of Habeas Corpus ("Pet."), ECF [1] ¶¶ 4, 8. He is the father of three children who are United States citizens. *Id.* ¶ 8.

Respondents first initiated removal proceedings against petitioner in 2013. *Id.* ¶ 7. At that time, petitioner was granted bond by an Immigration Judge released from custody. Decl. of Enrique Rodriguez ("Rodriguez Decl."), ECF [9], ¶ 6. Petitioner's removal proceeding wound its way through the immigration system, culminating in a petition for review ("PFR") to the Ninth Circuit in 2021. Pet. ¶ 8. While considering the PFR, the Ninth Circuit entered a stay of removal pending the court's mandate. Rodriguez Decl. ¶ 9. Respondents subsequently filed an unopposed motion to administratively close the case, which the Ninth Circuit granted on March 3, 2022, noting that the stay of removal remained in effect while the case was closed. *Id.* ¶ 10.

On September 23, 2025, respondents filed a motion with the Ninth Circuit to reopen the PFR case against petitioner. *Id.* ¶ 11. On October 24, 2025, while looking for someone else, CBP officers detained and arrested petitioner in Portland, Oregon "based on his criminal history and subsequent failure to update his address." *Id.* ¶ 12. At 12:54 p.m. that day, petitioner's counsel filed his petition for a writ of habeas corpus and motion for temporary restraining order, contending that his detention without notice, without explanation, and without an individualized determination of flight risk or dangerousness is contrary to the U.S. Constitution and federal law. *See generally* Pet.; Pet'r Mot. for TRO ("TRO Mot."), ECF [2], at 4-5. Just over two hours later, at 3:14 p.m., petitioner was transferred to the Northwest ICE Processing Center in Tacoma, Washington. *See* Order of October 24, 2025, ECF [6].

On October 28, respondents filed a response opposing both the habeas petition and TRO motion, supported by the declaration of an ICE deportation officer. *See generally* Rodriguez Decl.; Resp'ts Resp., ECF [8] ("Gov't Resp."). After holding a status conference and hearing argument from both sides, the Court issued a TRO directing the government to release petitioner from custody. *See* Minutes of Proceedings of October 29, 2025, ECF [11]; Order of October 30, 2025, ECF [14].

The parties filed a joint status report on November 10, 2025, consenting to the conversion of the TRO into a preliminary injunction and agreeing that the *habeas* petition could be decided on the briefs already submitted. Joint Status Report, ECF [15]. The Court then converted the TRO to a preliminary injunction pending resolution of the litigation and took the *habeas* petition under advisement. *See* Order of November 13, 2025, ECF [17].

## DISCUSSION

Petitioner contends that his re-detention without explanation, without process, and without a determination that he is a flight risk or danger to the community violates the Due Process Clause of the U.S. Constitution. TRO Mot. 4-5.[1] Respondents argue that (1) petitioner is subject to mandatory detention

---

[1] Although petitioner's TRO Motion also contends that such actions by respondents are "arbitrary and capricious and in violation of [r]espondents' own policies" and that he is, therefore, "likely to succeed on the merits of his claim under the Administrative Procedures Act," TRO Mot. 4-5, the Court resolves his petition on due process grounds and does not reach his APA claim. Because the parties agreed to rest on

3

pursuant to 8 U.S.C. § 1225(b)(2); and (2) even under Section 1226(a)[2] the government may re-detain petitioner at will without any process or individualized determinations. *See* Gov't Resp. 6-8, 12. The Court concludes that respondents are wrong on both fronts and petitioner's detention is in violation of the U.S. Constitution.

### A. Mandatory or Discretionary Detention

Respondents assert that, "[d]ue to changes in the law" since petitioner's initial detention in 2013, he is "now detained under [Section 1225(b)(2)(A)] as an applicant for admission and therefore subject to mandatory custody." Gov't Resp. 8 (citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)). The contention appears to be that if petitioner is detained pursuant to Section 1225(b), rather than the discretionary detention provisions of Section 1226(a), then an Immigration Judge "d[oes] not have authority over the bond request . . . and [petitioner] *must be detained* for the duration of their removal proceedings." *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 220 (emphasis added). Because the "statutory provision governing [p]etitioner's detention determines what procedures [r]espondents must follow," if petitioner is subject to Section 1225(b) he may be owed less process. *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *4 (S.D. Cal. Nov. 17, 2025)

Over the last year, dozens of courts have considered respondents' novel argument that Section 1225(b) applies to noncitizens who have been in the country for an extended period, and they have consistently found it unpersuasive. Recently, another judge in this district collected more than thirty cases rejecting respondents' "dubious assertion" that Section 1225 empowers to arrest and hold any noncitizen present without legal status, whether detained at a point-of-entry or after spending years in the country. *See J.Y.L.C. v. Bostock*, No. 3:25-cv-02083-AB, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *see also Rodriguez Vazquez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30,

---

their TRO Motion papers, *see* Joint Status Report, ECF [15], the Court considers the facts and arguments advanced in the habeas petition and TRO Motion papers to the extent that they are relevant to a writ of *habeas corpus*.

[2] Unless otherwise indicated, citations to sections of the U.S. Code are referencing sections of Title 8, where the Immigration & Nationality Act ("INA") is codified.

2025) (collecting cases and concluding after a thorough analysis that "the government's [interpretation of Section 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); *Faizyan*, 2025 WL 3208844, at *5 (holding that Section 1226 applies to a petitioner who "'DHS has consistently treated'" as subject to discretionary detention and "who has been residing in the United States for two years" (quoting *Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588, at *3 (S.D.N.Y. 2025)); *Cardona-Lozano v Noem*, No. 1:25-cv-1784-RP, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and [the Board of Immigration Appeal's] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief." (collecting cases)).

Respondents have shown no reason to depart from the great weight of authority here. Section 1225(b) "authorizes the Government to detain certain [noncitizens] *seeking* admission into the country," while Section 1226(a) and (c) "authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). Petitioner is decisively in the latter category of noncitizens: he has been in the country since 1999, has previously been released on bond pursuant to Section 1226, and was subsequently re-arrested in Portland, Oregon, more than 200 miles from a land border. Rodriguez Decl. ¶¶ 4, 6, 12. Petitioner is not a noncitizen "seeking admission" within the meaning of Section 1225(b)(2)(A), and he is subject to detention only under the provisions of Section 1226.

**B. Due Process**

Because petitioner's detention is governed by the Section 1226(a), respondents must exercise the discretion provided for by that statute in conformity with the Due Process Clause of the U.S. Constitution, which protects all "person[s]" from deprivation of "of life, liberty, or property, without due process of law." U.S. Const. amend. V.[3] Assessing whether a noncitizen's detention violates the Due

---

[3] Respondents do not question Supreme Court precedent holding that the Due Process Clause applies to noncitizens in petitioner's circumstances. *See, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025); *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896).

5

Process Clause requires balancing three factors: (1) "'the private interest that will be affected by the official action'"; (2) "'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'"; and (3) "'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.'" *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969-70 (N.D. Cal. 2019). Here, petitioner has established that the weight of these factors favors his release.

With respect to the first *Matthews* factor, the private interest affected by petitioner's detention is his interest in physical liberty. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Respondents generally contend that they have considerable discretion in whether to detain, release, or re-detain noncitizens subject to removal proceedings. Gov't Resp. 6-7. That may be true. Nonetheless, such discretion must be exercised in accordance with the Due Process Clause because even individuals "over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi*, 792 F. Supp. 3d at 1032; *see Ortega*, 415 F. Supp. 3d at 969 ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). Further, where the initial detention decision is discretionary, and the government decides to release an individual from custody, such a decision creates "an implicit promise that [petitioner's liberty] will be revoked only if he fails to live up to the" conditions of release. *Morrissey v. Brewer*, 408 U.S. 471, 483 (1972); *see Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding that pre-deprivation process is due in both the probation and parole contexts). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen subject to removal] have a liberty interest in remaining out of custody on bond." *Ortega*, 415 F. Supp. 3d at 969; *see Garro Pinchi*, 792 F. Supp. 3d at 1033 (collecting cases finding that noncitizens have a liberty interest in not being re-detained after being released on bond).

Here, respondents exercised their discretion to release petitioner from custody more than twelve years ago. Rodriguez Decl. ¶ 6. Based on respondents' regulations, this reflects a determination that petitioner's release does not "pose a danger to the safety of other persons or of property" and that he is "likely to appear for any scheduled proceeding." 8 C.F.R. § 1236.1(c)(3); *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), *aff'd*, 905 F.3d 1137 (9th Cir. 2018). Respondents' 2013 release decision also constitutes an implied promise that petitioner's liberty will not be deprived again so long as he remains neither a danger to the community nor a flight risk. *See Morrissey*, 408 U.S. at 483; *Garro Pinchi*, 792 F. Supp. 3d at 1034. Respondents do not contend that petitioner violated either of these conditions of his release.

Second, the risk that respondents will erroneously deprive petitioner of his liberty in the absence of a pre-deprivation finding of flight risk or danger is high. Civil immigration detention must be "nonpunitive in purpose"—*i.e.*, it must be reasonably related to the statutorily authorized purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690. Respondents do not argue that petitioner is dangerous or a flight risk, and the facts of his long tenure in the community, his three U.S. citizen children, and no asserted law enforcement involvement in the twelve years prior to his October 24 arrest suggest he is neither. *See* Pet. ¶¶ 7-8. Absent a particularized finding that he is a flight risk or danger to the community, there is a serious risk that petitioner will face an erroneous deprivation of liberty. *See Garro Pinchi*, 792 F. Supp. 3d at 1035 (observing that civil immigration detention "is permissible only to prevent flight or protect against danger to the community" and finding that the second *Matthews* factor favors petitioner where "the government has offered no evidence—including in the proceedings before this Court—that [petitioner's] detention would serve either purpose"). Therefore, the second *Matthews* factor favors petitioner.

Finally, respondents have articulated no legitimate interest in holding petitioner without a hearing. The government's interest in enforcing immigration laws, generally, has little bearing on the

7

legitimacy of detaining petitioner without a bond hearing.[4] The only conceivable interest respondents could have in petitioner's detention without a hearing is if he were a flight risk or a danger to the community. As discussed, *supra*, there is scant evidence of that. Respondents suggest that a lapse in petitioner's updating of his address with ICE is sufficient to justify his re-detention. Gov't Resp. 4. Whether that is sufficient evidence that petitioner has become a flight risk, despite three U.S. citizen children, would be a determination for an Immigration Judge. Finally, the cost of petitioner's detention is substantial in comparison to the minimal cost to the government of providing petitioner a pre-deprivation hearing. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are 'staggering'"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding the third *Matthews* factor favored the petitioner in an immigration habeas case because "[t]he effort and cost required to provide [the p]etitioner with procedural safeguards is minimal").

Because petitioner's liberty interest is extremely serious, the risk of erroneously depriving him of that interest is high without a pre-deprivation hearing, and the government's interest in detaining him without additional process is low, he is entitled to reasonable notice and a hearing, and the government has violated petitioner's due process rights by holding him without such a hearing.

## CONCLUSION

For the reasons stated herein, petitioner's writ of *habeas corpus*, ECF [1], is GRANTED IN PART. In fashioning a *habeas* writ, "a court has broad discretion in conditioning a judgment granting habeas relief" and in "dispos[ing] of habeas corpus matters 'as law and justice require.'" *Hilton v.*

---

[4] Indeed, the government represents that the Ninth Circuit's stay of removal has "remained in effect" while the PFR case is closed. *See* Rodriguez Decl. ¶ 10. At the October 29, 2025, status conference before this Court, counsel for respondents indicated that the Ninth Circuit set a briefing schedule on the PFR case extending through late March 2026. The Ninth Circuit's order has not been made available to this Court, but to the extent that removal is stayed, respondents lack an interest in—or lawful authority to initiate—petitioner's removal from the country in the near future. *See Kay v. Ashcroft*, 387 F.3d 664, 672 (7th Cir. 2004) ("Once a deportation order is stayed, the Immigration Court is prevented from executing an alien's deportation." (citing *In re M–S–*, 22 I. & N. Dec. 349, 354 (BIA 1998), *and* 8 U.S.C. § 1231(a)(1)(B)); *Forero-Arias v. Chertoff*, No. 07-cv-1374-WQH-WMC, 2008 WL 483627, at *3 (S.D. Cal. Feb. 21, 2008) ("[W]here, as here, the Circuit Court of Appeals issues a stay of deportation, the [noncitizen] cannot be removed until the Court of Appeals issues an order affirming the administrative order of removal or otherwise lifts the stay. . . .").

*Braunskill*, 481 U.S. 770, 775 (1987) (quoting 28 U.S.C. § 2243). Here, the Court finds that the law and justice require, pursuant to section 1226(a), an individualized finding of dangerousness or flight risk by an Immigration Judge if petitioner is to be detained pending the Ninth Circuit's resolution of his appeal. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1059, 1065 (9th Cir. 2008) (holding that a noncitizen may be detained pursuant to Section 1226 upon a finding of dangerousness or flight risk).

The Court ORDERS as follows: Respondents shall give petitioner an out-of-custody bond hearing before an Immigration Judge by December 10, 2026, or affirm, in a filing with this Court by that date, that petitioner will continue to be released on conditions previously imposed by the immigration court pending resolution of removal proceedings in the Ninth Circuit. Further, respondents are PERMANENTLY ENJOINED from arresting or detaining petitioner on the basis of 8 U.S.C. § 1225(b)(2) because that statute does not apply to petitioner.

IT IS SO ORDERED.

DATED this 4th day of December, 2025.

_____
Adrienne Nelson
United States District Judge